UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL V. DESTRA,

          Plaintiff

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

          Defendant.

Case No. SACV 14-01538-GJS

**MEMORANDUM OPINION AND
ORDER**

      On September 26, 2014, Plaintiff filed a Complaint seeking review of the denial of his applications for a period of disability and disability insurance benefits ("DIB").  The parties filed consents to proceed before the undersigned United States Magistrate Judge, and a Joint Stipulation addressing disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

      On July 11, 2011, Plaintiff filed his application for a period of disability and DIB.  (Administrative Record ("AR") 156-57.)  Plaintiff claimed to have become disabled as of July 28, 2009, due to morbid obesity, depression, diabetes, high blood pressure, Leukocytosis, and high cholesterol.  (AR 156, 169.)

The Commissioner denied Plaintiff's claim initially and on reconsideration (AR 29, 93-94), and Plaintiff requested a hearing (*id.* 107-08).  On November 14, 2012, Plaintiff, who was represented by counsel, appeared and testified at a hearing before an Administrative Law Judge (the "ALJ").  (AR 29, 55-92.)

On December 11, 2012, the ALJ rendered an unfavorable decision.  (AR 29-42, the "Decision.")  The ALJ concluded that Plaintiff has four severe impairments – obesity, diabetes mellitus, mood disorder and degenerative disc disease of the lumbar spine – but that none meet or medically equal a listed impairment.  (A.R. 31-34.)  The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations:  out of an eight hour work day, sit six hours and stand or walk two hours; occasionally lift 20 pounds and frequently lift ten pounds; occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; have only occasional public interaction; and no performance of jobs requiring hypervigilance.  (AR 34-40.)  Although finding that Plaintiff cannot perform his past relevant work, the ALJ determined that jobs exist in the national economy which he can perform, including bench assembler and house sitter, and thus, he is not disabled within the meaning of the Social Security Act.  (A.R. 40-41.)

On July 24, 2014, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)  Accordingly, the Decision is the final decision of the Commissioner.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

1  *Perales*, 402 U.S. 389, 401 (1971) (citation and quotations omitted); *see also*

2  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014)

3  ("Substantial evidence is 'more than a mere scintilla but less than a preponderance;

4  it is such relevant evidence as a reasonable mind might accept as adequate to

5  support a conclusion.'") (internal citations omitted).  "Even when the evidence is

6  susceptible to more than one rational interpretation, we must uphold the ALJ's

7  findings if they are supported by inferences reasonably drawn from the record."

8  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

9      Although this Court cannot substitute its discretion for that of the Commissioner,

10  the Court nonetheless must review the record as a whole, "weighing both the

11  evidence that supports and the evidence that detracts from the [Commissioner's]

12  conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal

13  quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum.*

14  *Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  "The ALJ is responsible for determining

15  credibility, resolving conflicts in medical testimony, and for resolving ambiguities."

16  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

17      The Court will uphold the Commissioner's decision when the evidence is

18  susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d

19  676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by

20  the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did

21  not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

22

23                          **DISCUSSION**

24      There are two issues in dispute here.  (Joint Stipulation at 4.)  First, did the ALJ

25  provide specific and legitimate reasons to reject the opinions of treating physician

26  Hassari Alkhouli and examining physician Maria Ruby Leynes?  Second, did the

27  ALJ provide clear and convincing reasons for finding Plaintiff's subjective symptom

28  testimony not wholly credible?

3

1  # I. <u>Issue One</u>

2   An ALJ is obligated to take into account all medical opinions of record, resolve

3  conflicts in medical testimony, and analyze evidence.  20 C.F.R. § 404.1527(c);

4  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  In conducting this

5  analysis, the opinion of a treating or examining physician is entitled to greater

6  weight than that of a non-examining physician.  *Garrison v. Colvin*, 759 F.3d 995,

7  1012 (9th Cir. 2014).

8   To reject the uncontradicted opinion of a treating or examining physician, the

9  ALJ must provide clear and convincing reasons.  *Ghanim v. Colvin*, 763 F.3d 1154,

10  1160-61 (9th Cir. 2014); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  When a

11  treating or examining physician's opinion is contradicted by another opinion, an

12  ALJ may not reject the opinion without "specific and legitimate reasons" that are

13  supported by substantial evidence in the record.  *Ghanim*, 763 F.3d at 1161;

14  *Garrison*, 759 F.3d at 1012; *Lester*, 81 F.3d at 830-31.  "This is so because, even

15  when contradicted, a treating or examining physician's opinion is still owed

16  deference and will often be 'entitled to the greatest weight . . . even if it does not

17  meet the test for controlling weight.'"  *Garrison*, 759 F.3d at 1012 (citation

18  omitted).

19

20  ## A. <u>Dr. Alkhouli</u>

21   Plaintiff received medical treatment at Pathways Medical Group from March

22  2011 through at least June 28, 2012.  (AR 373-410.)  On May 2, 2012, Dr. Alkhouli,

23  at physician at Pathways, filled out a Multiple Impairment Questionnaire.  (AR 401-

24  08, the "Questionnaire.")  On August 13, 2012, Dr. Alkhouli sent a brief letter to

25  Plaintiff's attorneys.  (AR 410, the "Letter.")

26   In the Questionnaire, Dr. Alkhouli indicated that Plaintiff had been treated

27  monthly since March 9, 2011, and was diagnosed with Diabetes Mellitus type II

28  uncontrolled, morbid obesity, chronic pain, insomnia, depression, Hyperlipidemia,

and DeQuervain Tenosynovitis.  (AR 401.)  When asked to identify the clinical findings that supported these diagnoses, Dr. Alkhouri noted only:  "Positive lab work proving Diabetes diagnosis and Hyperlipidemia.  Patient is morbidly obese.  Chronic pain"; and an October 24, 2011 laboratory test result regarding glucose and hemoglobin levels.  (AR 401-02.)  When asked to list Plaintiff's primary symptoms, Dr. Alkhouri simply noted, conclusorily, diabetes, morbid obesity, depression, and chronic pain, and then stated that Plaintiff is "unable to ambulate more than 30 feet w/o pain & shortness of breath."  (AR 402.)  Dr. Alkhouri opined that:  in an eight-hour day, Plaintiff can sit 0-1 hours and stand/walk 0-1 hours; Plaintiff could not sit continuously and would have to get up and move around every 15-30 minutes; and Plaintiff could not stand/walk continuously.  (AR 403-04.)  Dr. Alkhouri opined that Plaintiff can lift and carry 0-10 pounds frequently, 10-50 pounds occasionally, and never greater than 50 pounds.  (AR 404.)  Dr. Alkhouri also opined that Plaintiff: has moderate limitations (bilateral) in grasping, turning, twisting objects, using fingers/hands for fine manipulations and using arms for reaching (including overhead), because he suffers from DeQuervain's Tenosynovitis; and cannot push, pull, kneel, bend, or stoop at all.  (AR 404-05, 407.)

In the Letter sent to counsel three months later, Dr. Alkhouli stated that Plaintiff had not shown any improvement during the time he had been treated at Pathways but, inconsistently, his diabetes is now "controlled."  Dr. Alkhouri also opined that Plaintiff "is unable to ambulate more than 10 feet," in contrast to his prior opinion that Plaintiff can ambulate for 30 feet.  (AR 410.)  Dr. Alkhouri further opined that Plaintiff is permanently and completely disabled.  (*Id.*)

In his July 25, 2011 Function Report, Plaintiff stated, *inter alia*, that:  he weighed 475 pounds and it was hard to move around; he could walk 100 feet before having to rest for ten minutes; and he did not go out much, because it was not comfortable, he was "too fat," and it was hard to breathe.  (AR 188-89, 191.)  Sixteen months later, at the November 14, 2012 administrative hearing, Plaintiff testified about his

depression, his obesity, his diabetes, and his physical problems and limitations.  (AR 61-64, 70-78.)  Among other things, Plaintiff testified that:  he has difficulty sitting and, after 20 minutes, needs to twist and turn; he has constant pain in his lower back and knee; and when he stands, it puts a lot of pressure on his knee and, thus, walking is difficult, he avoids it, and walks no more than ten feet.  (*Id.*)  When asked about Dr. Alkhouli, Plaintiff identified him as the "main doctor" for the "medical group" in which Plaintiff's regular doctor (Dr. Drecker) practices.  (AR 75-76.)

In the Decision, the ALJ gave "little weight" to Dr. Alkhouli's opinion that Plaintiff is unable to perform even a limited range of sedentary work.  The ALJ concluded that this opinion was not supported by the evidence, was contradicted by the opinion of Dr. Soheila Benrazavi, an examining physician,[1] and was internally inconsistent.  (A.R. 39.)  The ALJ observed that Plaintiff's principal treating doctor appeared to have been Dr. Natalie Bittar and that Dr. Alkhouli rarely saw Plaintiff.  (*Id.*)  The ALJ noted the unexplained discrepancy between Dr. Alkhouli's May 2012 opinion that Plaintiff's diabetes was uncontrolled, and his opinion three months later that Plaintiff's diabetes was controlled, as well as his indication in the Questionnaire that Plaintiff suffered from diabetic neuropathy but his failure to mention this diagnosis in the Letter.  (*Id.*)  The ALJ found that little, if any, treating records supported Dr. Alkhouli's "extreme" opinion.  (*Id.*)

Plaintiff argues that the ALJ erred in affording Dr. Benrazavi's opinion some weight while giving little weight to Dr. Alkhouri's opinion.  Plaintiff contends that Dr. Benrazavi's opinion should not have been given "any weight," because she examined Plaintiff only once, did not review any records, and her finding of no standing or walking limitations is "unbelievable" given Plaintiff's weight, knee pain,

---

[1]     Earlier in the Decision, the ALJ stated that he gave "some weight" to Dr. Benrazavi's opinion, finding that it was well supported and consistent with the evidence.  (AR 36-37.)  Dr. Benrazavi concluded, *inter alia*, that Plaintiff had no exertional, postural, or manipulative limitations.  (AR 276-77.)

6

wrist tenosynovitis and "uncontrolled" diabetes.  (Joint Stip. at 8-9.)  Plaintiff also argues that the ALJ erred in questioning whether Dr. Alkhouri actually was Plaintiff's treating physician, because Dr. Alkhouri saw Plaintiff twice – on "February 2, 2012" and April 11, 2012 – and prescribed medication for him, including adding antidepressants and increasing Plaintiff's insulin regimen.  (*Id.* at 6 (citing AR 399-400), 10.)  Finally, Plaintiff notes that the ALJ misstated Dr. Alkhouri's opinion on the question of ambulation by labeling it as "unable to ambulate," when in fact, Dr. Alkhouri stated that Plaintiff cannot ambulate more than 30 feet without pain and shortness of breath and, later, said Plaintiff is unable to ambulate more than ten feet.  Plaintiff argues it is "[c]ommon sense" that Plaintiff's weight alone is objective evidence that warrants the imposition of an extreme limitation on walking.  (*Id.* at 10-11.)

As a threshold matter, it is unclear that Dr. Alkhouli actually treated Plaintiff.  At the administrative hearing, Plaintiff testified that Dr. Alkhouli simply was the practice head at Pathways and was not Plaintiff's treating doctor.  The two alleged instances of treatment by Dr. Alkhouli cited by Plaintiff (at AR 399 and 400) appear to reflect treatment by other physicians.  AR 399 reflects February 15, 2012 (not "February 2, 2012," as Plaintiff asserts) treatment notes by Dr. Helen Khalafbeigi.  AR 400 reflects April 11, 2012 treatment notes, author somewhat uncertain; the box for Dr. Victoria Greblya appears to be ticked and the physician signature on the notes does not match Dr. Alkhouli's signatures on the Questionnaire and the Letter.  (*Compare* AR 400 with AR 408, 410.)  In short, Plaintiff's argument that Dr. Alkhouli actually treated Plaintiff and prescribed medication for him on at least two occasions is not well supported.

That said, as Plaintiff correctly points out, Dr. Alkhouli plainly had available to him the treating notes of other Pathways physicians, as well as lab and test results,

when he rendered his May 2011 and August 2011 opinions.[2]  While unclear, he may meet the 28 C.F.R. § 404.1502 requirements for treating sources.  *See Benton v. Barnhart*, 331 F.3d 1030, 1036-39 (9th Cir. 2003) (physician who supervised the claimant's treatment team and personally examined the claimant a year before preparing a mental RFC assessment form constituted a treating physician).

Even assuming, *arguendo*, that Dr. Alkhouri was a treating physician, the ALJ did not err in finding that aspects of Dr. Alkhouri's opinions do not find support in the treating records.  For example, Dr. Alkhouri opined that Plaintiff was moderately limited in virtually all aspects of the use of his right and left arms based on DeQuervain Tenosynovitis.  (AR 404-05.)  However, the sole reference in the Pathways records to any diagnosis of DeQuervain Tenosynovitis, much less any pain or other issues related to either of Plaintiff's arms and hands, is in Dr. Bittar's July 29, 2011 treatment notes.  At that visit, Plaintiff complained of left wrist pain, which radiated from the long extension of his thumb to the forearm, which resulted after he engaged in a repetitive movement with a screwdriver.  Dr. Bittar noted her impression of DeQuervain Tenosynovitis and recommended a splint for the left wrist and Ibuprofen.  (AR 387.)  Subsequent treatment notes by Dr. Bittar and the other Pathways physicians who saw Plaintiff contain no mention of this issue or any problems Plaintiff was suffering in connection with his arms and/or hands.  (*See* AR 388-89, 395-96, 398-400, 409.)  Thus, it is unclear on what Dr. Alkhouli based his imposition of moderate limitations on Plaintiff's use of *both* arms and hands.

---

[2]      It appears that Dr. Bittar was Plaintiff's treating physician at Pathways as of his initial March 9, 2011 visit but left the practice at some point thereafter.  The record contains treating notes from Dr. Bittar dated March 9, 2011, March 16, 2011, March 23, 2011, April 6, 2011, April 20, 2011, May 27, 2011, June 29, 2011, July 29, 2011, September 19, 2011, October 18, 2011, October 28, 2011, and November 29, 2011.  (AR 374, 381-89, 395-96.)  At December 20, 2011, February 15, 2012, and June 29, 2012 visits, Plaintiff was seen by Dr. Khalafbeigi.  (AR 398-99, 409.)

8

1   Similarly, Dr. Alkhouli initially opined that Plaintiff cannot ambulate more than 30

2   feet without pain and shortness of breath, and then three months later, stated that

3   Plaintiff cannot ambulate more than ten feet, period, yet nothing in the Pathways

4   treating records supports these quite specific opinions as to Plaintiff's limitations.[3]

5   Dr. Alkhouli also opined that, in an eight-hour work day, Plaintiff can sit and stand

6   from "0-1" hours,[4] but again, there is nothing in the Pathways treating records to

7   support the conclusion that Plaintiff cannot sit or stand at all or for such a short

8   duration of time.  Accordingly, the ALJ's finding that Dr. Alkhouri's opinions were

9   not well supported by the treatment records was specific and legitimate and

10  supported by substantial evidence.  *See, e.g.*, *Batson v. Commissioner*, 359 F.3d

11  1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that

12  are conclusory, brief, and unsupported by the record as a whole . . . or by objective

13  medical findings"); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (an ALJ

14  properly may reject a treating physician's opinions that "were so extreme as to be

15  implausible and were not supported by any findings made by any doctor"); *Holohan

16  v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir.  2001) (a physician's opinion may

17  be "entitled to little if any weight" when the physician "presents no support for her

18  or his opinion"); *see also Molina*, 674 F.3d at 1111 ("the ALJ may 'permissibly

_____

[3]      The Court does not disagree with Plaintiff's assertion that it is "common
sense" his weight would affect his ambulation ability.  The question here, however,
is whether medical evidence supported Dr. Alkhouli's opinions on the ambulation
question.  Dr. Alkhouli rendered very specific opinions and limitations – first,
walking no more than 30 feet, then modifying that to walking no more than ten feet
– but there is nothing in the treatment records to support such specific limitations, as
the ALJ correctly found.  Significantly, in his July 25, 2011 Function Report, which
Plaintiff signed less than three weeks before Dr. Alkhouli issued the Letter, Plaintiff
stated that he can walk 100 feet before he needs to rest, thus further highlighting the
unsupported nature of Dr. Alkhouli's ambulation opinions.  (AR 189.)

[4]      Given that Dr. Alkhouri had the option to select "1" hour, his selection of "0-
1" presumably reflects an opinion that Plaintiff can sit or stand only for some time
period of less than an hour or perhaps not at all.

reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions'") (citation omitted).

In addition, the ALJ correctly observed that Dr. Alkhouli's opinions were inconsistent.  He opined in May 2012 that Plaintiff's diabetes was uncontrolled yet three months later, without explanation, opined that it was controlled.  Dr. Alkhouli also failed to explain the discrepancy in his two ambulation opinions.  Further, it is difficult to reconcile Dr. Alkhouli's opinion that Plaintiff cannot sit or stand at all and/or for less than one hour each with his opinion that Plaintiff must "get up and move around" every 15-30 minutes (AR 403) – how can someone who either cannot stand at all and/or for less than one hour in an eight-hour day "move around" in an upright position every 15-30 minutes during that same eight-hour period?  As the ALJ recognized, there were inconsistencies within Dr. Alkhouli's opinions, and this was a specific and legitimate reason to reject them. *See, e.g., Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (when ALJ identified a contradiction in a treating psychologist's opinion, *i.e.,* opining that the claimant was unemployable yet at the same time acknowledging that he was working full time, this was a specific and legitimate reason or rejecting the opinion); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between physician's opinion and clinical notes regarding claimant's ability to stand and walk constituted substantial evidence  supporting the ALJ's rejection of the opinion).

The Court concludes that the ALJ's rejection of Dr. Alkhouli's opinion was not error.


**B. <u>Dr. Leynes</u>**

Dr. Leynes examined Plaintiff on October 30, 2012.  In her report, she described the substance of the medical records she reviewed, her diagnoses, clinical findings, and the information conveyed by Plaintiff, and she set forth various functional

10

limitations.  (AR 419-30.)  Among other things, Dr. Leynes found that Plaintiff: can sit for a total of four hours in an eight-hour day, although he must get up and move for 15 minutes every 15-30 minutes; can stand/walk for a total of two hours in an eight-hour day, although he must be allowed to get off his feet for 15-30 minutes every 15 minutes; is precluded from work requiring fine dexterity and manipulative hand movements due to peripheral neuropathy; and is precluded from climbing stairs and walking on uneven surfaces due to his peripheral neuropathy.  (AR 430.)

The ALJ gave Dr. Leynes's opinion "little weight" for two reasons.  (AR 39.)  First, the ALJ stated that "Dr. Leynes was only a consultant and never treated the claimant."  (*Id.*)  Second, the ALJ stated that Dr. Leynes's opinion is not well supported by the record and is inconsistent with the opinion of Dr. Benrazavi, the other consultative examiner, who found that Plaintiff has no limitations.  (*Id.*)  Neither stated reason satisfies the specific and legitimate reason requirement.

The Court agrees with Plaintiff's argument as to why the ALJ's first reason was not legitimate.  Both Dr. Benrazavi and Dr. Leynes were consulting/examining physicians who did not treat Plaintiff, yet the ALJ had no problem relying on the former's opinion despite the lack of any treating relationship.  Similarly, the ALJ's dismissal of Dr. Leynes's imposition of manipulative limitations on the ground that Dr. Leynes is not a neurologist or other specialist and has not treated Plaintiff (AR 40) – in favor of Dr. Benrazavi's findings that no such limitations exist – is not legitimate given that Dr. Benrazavi also is not a neurologist or specialist or treating physician.  Moreover, Dr. Benrazavi apparently did not review any of Plaintiff's medical records (AR 277), unlike Dr. Leynes, who made a detailed review of his medical history (AR 423-29) and issued a more current and comprehensive report.

With respect to the ALJ's second reason for disregarding Dr. Leynes's opinion, the ALJ is correct that Dr. Leynes's opinion and Dr. Benrazavi's opinion are inconsistent with each other.  Dr. Benrazavi examined Plaintiff on August 8, 2011, but did not review his medical records.  She found that, despite his diabetes (with

11

the beginnings of diabetic peripheral neuropathy), morbid obesity, high blood pressure, and history of back pain, Plaintiff has no exertional, postural, manipulative, or other limitations whatsoever.  Approximately 15 months later, Dr. Leynes reviewed Plaintiff's medical records in detail and examined him, and found, *inter alia*, the limitations set forth above with respect to his ability to sit, stand/walk, and manipulate his hands.

When physician opinions conflict, the ALJ is responsible for resolving conflicts in medical opinions.  *See, e.g., Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  That said, the ALJ must do so in a manner that is reasonable and supported by the record.  Here, the ALJ was faced with the opinion of one examiner – who did not review medical records and opined that a morbidly obese man suffering from diabetes with the beginnings of peripheral neuropathy, as well as degenerative disc disease of the lumbar spine and mood disorder, has zero limitations of any kind – and the more current opinion of another examiner – who after reviewing Plaintiff's medical records and examining him, found that substantial limitations were appropriate.  While these two opinions are "inconsistent," the record does not support the ALJ's conclusion that the Leynes opinion may be disregarded in favor of the Benrazavi opinion because the latter is "well supported and consistent with the evidence of record."  (AR 36.)  The ALJ himself obviously found Dr. Benrazavi's conclusion that *no* limitations are justified to be dubious given his imposition of sit, stand/walk, lifting, climbing, balancing, stooping, kneeling, crouching, and crawling limitations.

In his second reason, the ALJ also concluded that Dr. Leynes's opinion that Plaintiff has peripheral neuropathy warranting the imposition of hand manipulation limitations "is not well-supported by the medical evidence of record."  (AR 39.)  As the ALJ noted, however, in September 2009, Plaintiff presented in an emergency room visit with numbness and tingling in his right arm from shoulder through fingers, and the treating doctor suspected peripheral neuropathy.  (AR 32, 261-62,

264.)  In August 2011, Dr. Benrazavi observed that Plaintiff's history suggests the beginning signs of diabetic peripheral neuropathy.  (AR 277.)  On June 13, 2012, a podiatrist examined Plaintiff, who complained of foot numbness, and found a "loss of protective sensation to plantar toes bilaterally" and diagnosed neuropathy.  (AR 416.)  On October 15, 2012, Plaintiff presented at the Los Alamitos Medical Center emergency room with burning and tingling pain in his right upper extremity, and he noted having experienced similar pain in the past in his left upper extremity and in his feet.  The physician concluded that he had peripheral neuropathy.  (AR 426.)[5] At the end of October 2012, Dr. Leynes made clinical findings that Plaintiff had numbness in both feet and hands and decreased grip strength, and she concluded that he suffered from peripheral neuropathy.  (AR 423, 428, 430.)

"Where a claimant's condition becomes progressively worse, medical reports from an early phase of the disease are likely to be less probative than later reports." *Magallanes v. Brown*, 881 F.2d 747, 755 (9th Cir. 1989); *see also Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) ("Where claimant's medical condition is progressively deteriorating, the most recent medical report is the most probative."). Diabetic neuropathy is a progressive condition suffered by some persons who have diabetes.  *See, e.g.,* STEDMANS MEDICAL DICTIONARY 5921260 (2014); http//www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/basics <visited October 27, 2015>.  The ALJ's dismissal of Dr. Leynes's findings regarding Plaintiff's peripheral neuropathy, on the ostensible ground that the earlier medical records contained little mention of the condition and Dr. Benrazavi found that it is mild and has not caused atrophy, is not persuasive given the possible progression of the condition due to Plaintiff's longstanding diabetes and risk factors, including his

---

[5]    This medical record was reviewed by Dr. Leynes but is not contained within the Administrative Record.

1   weight.[6] *See id.* Moreover, the ALJ ignored the medical record provided to Dr.
2   Leynes of an October 15, 2012 emergency room physician's findings regarding
3   peripheral neuropathy.

4        Finally, as Plaintiff notes, unlike Dr. Leynes, Dr. Benrazavi did not review
5   Plaintiff's medical records before rendering her opinion that he has no work-related
6   limitations.  Under 20 C.F.R. § 404.1517, the Commissioner was required to give
7   Dr. Benrazavi "any necessary background information about [Plaintiff's] condition,"
8   but apparently failed to do so.  Given the ALJ's failure to set forth specific and
9   legitimate reasons for rejecting Dr. Leynes's opinion in favor of Dr. Benrazavi's
10  opinion, the Court cannot conclude that Dr. Benrazavi's opinion on its own
11  constitutes substantial evidence to support the ALJ's RFC determination.  *See, e.g.,*
12  *Jackson v. Astrue*, No. CIV S-10-2401-EFB, 2014 WL 639304, at *4 (E.D. Cal. Feb.
13  24, 2012) (finding that the ALJ erred in rejecting a treating physician opinion in
14  favor of an examining physician's opinion when the latter was not provided the
15  claimant's treating records); *Smith v. Astrue*, No. CV 10-4913-MAN, 2011
16  WL3300086, at *6 (C.D. Cal. July 29, 2011) (finding that consultative physician's
17  RFC assessment did not constitute substantial evidence and was not entitled to
18  controlling weight, because the physician was not provided with the claimant's
19  medical records at the time of the examination); *Ladue v. Chater*, No. C-95-0754
20  EFL, 1996 WL 83880, at *5 (N.D. Cal. 1996) (requiring remand when "[t]he ALJ
21  failed to conform to 20 C.F.R. § 404.1517 requiring that the consultative examiner
22  be provided with necessary background information regarding the claimant's
23  condition [and] it appears from the record that the ALJ gave [the consultative
24
25
26  _____
27  [6]      Significantly, Plaintiff testified that he had gained 140 pounds in the past
28  couple years (AR 73), a circumstance that could be relevant to the more substantial
    limitations found by Dr. Leynes.  The ALJ, however, ignored this evidence.

1   examiner's] consultative report considerable weight, even though [the consultative

2   examiner] was lacking important background information regarding plaintiff").

3        For these reasons, the Court concludes that the ALJ's rejection of Dr. Leynes's

4   opinion is not supported by specific and legitimate reasons.

5

6   II.   **Issue Two**.

7        Once a disability claimant produces objective medical evidence of an underlying

8   impairment that is reasonably likely to be the source of claimant's subjective

9   symptoms, all subjective testimony concerning the severity of the claimant's

10  symptoms must be considered.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir.

11  2004); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. §

12  404.1629(a) (explaining how pain and other symptoms are evaluated). "[U]nless an

13  ALJ makes a finding of malingering based on affirmative evidence thereof, he or

14  she may only find an applicant not credible by making specific findings as to

15  credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec.

16  Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also Garrison*, 759 F.3d at 1015

17  (reaffirming clear and convincing standard and noting that the standard "is not an

18  easy requirement to meet").  The factors to be considered in weighing a claimant's

19  credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies

20  either in the claimant's testimony or between the claimant's testimony and her

21  conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5)

22  testimony from physicians and third parties concerning the nature, severity, and

23  effect of the symptoms of which the claimant complains.  *See Thomas v. Barnhart*,

24  278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c).

25       The ALJ did not find malingering and found that Plaintiff's impairments

26  reasonably could be expected to cause the symptoms he claims, but that his

27  statements concerning their intensity, persistence, and limiting effects were only

28

partially credible.  (AR 35.)  The ALJ cited four reasons for finding Plaintiff's subjective symptom testimony to be not credible in full.

**First**, the ALJ noted that Plaintiff listed an onset date of July 28, 2009 in his application for benefits but, at the hearing, testified that he stopped working on September 28, 2009, because he had been laid off, would have continued working had he not been laid off, and did not suffer from any medical or physical problems at the time he was laid off.  (AR 38, 61.)  The ALJ concluded that, due to this testimony, Plaintiff's impairments were not the reason he "was unable to work." (AR 38.)  Plaintiff argues that the ALJ should have cleared up the apparent discrepancy between Plaintiff's testimony and his earlier allegation as to his onset date at the hearing and that, by waiting to raise the issue until the Decision, engaged in impermissible adversarial "Gotcha" behavior.

While the ALJ's first stated reason for finding Plaintiff not credible is clear, it is not convincing.  At most, the ALJ highlights an error in the initial allegation as to Plaintiff's onset date and an ambiguity in the record as to when Plaintiff's claimed disability actually commenced.  As Plaintiff testified, his depression commenced after he stopped working and was caused by the loss of work (AR 61), and his depression impairs his present ability to work (AR 62).  Plaintiff also suffers from physical impairments that appear to have worsened over time since he stopped working (AR 80), including substantial weight gain (AR 73)**,** increased knee pain (AR 71-72, 77), progressive peripheral neuropathy (as discussed earlier), and control issues with respect to his diabetes (AR 305, 374, 381-87, 389, 396).  Thus, while July 28, 2009 may not be an accurate onset date, Plaintiff's hearing testimony regarding his status at the time he was laid off does not, in the Court's view, provide a convincing reason for concluding that his testimony regarding his present impairments and their related symptoms lacks credibility.

**Second**, the ALJ concluded that Plaintiff had a "minimal treatment history" and this detracted from his credibility for four reasons.  (AR 38.)  First, the ALJ noted

that, although Plaintiff claims depression, had a 2011 episode of decompensation, and had his depression intensify when he was taken off medication at one point, he is not undergoing treatment from a mental health professional and, instead, is being treated by a family doctor.  The ALJ reasoned that, if Plaintiff actually is as depressed as he claims, he would have pursued treatment from a specialist.  (*Id.*) Second, the ALJ found Plaintiff's testimony that he can walk only ten feet baseless, because no treating doctor had advised him to limit his standing and medical staff had advised him to exercise more and lose weight.  (*Id.*)  Third, the ALJ found Plaintiff's claim of walking and balancing difficulties not credible, because no doctor has prescribed a brace, cane, walker, or wheelchair.  (*Id.*)  Fourth, the ALJ disbelieved Plaintiff's testimony as to the severity of his back pain, because no doctor has recommended epidural injections or back surgery and Plaintiff had not undergone physical therapy.  (*Id.*)

These are not clear and convincing reasons for discounting Plaintiff's pain and symptom testimony.  As to the first reason, the record is replete with evidence that Plaintiff lacked medical insurance and could not afford additional medical treatment – an uncontroverted fact the ALJ ignored.  (*See, e.g.,* AR 79 (Plaintiff was denied mental health treatment because he lacked insurance), 261 (Plaintiff advised ER physician that he cannot afford to go to the doctor), 305-06, 389 (Plaintiff was uninsured and could not afford his diabetes medications and ran out, which caused him to become ill enough to be hospitalized), 388 (Plaintiff was trying to get insurance), 419 (Plaintiff advised Dr. Leynes he had no money due to his unemployment).)  While the Ninth Circuit has held that an "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir.1995); *see also id.* at 922 ("[t]he relevant question is not whether somewhere on the planet there exists a [treatment] that the claimant

17

could use, if only he could afford the enormous price; rather, the question is whether the claimant, himself, can realistically obtain such a [treatment]"); *Orn*, 495 F.3d at 638 (the claimant's "failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding"); Social Security Ruling 82–59 (a person who otherwise meets the disability criteria may not be denied benefits for failing to obtain treatment that he cannot afford).  In addition, citing a lack of treatment in the case of mental impairments is disfavored.  *See Regennitter v. Commissioner of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-300 (9th Cir. 1999) ("we have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation'") (citation omitted).  Plaintiff's failure to pursue more aggressive or specialized treatment that he cannot afford, or seek referral to specialists while not covered by insurance, is not a sufficiently clear and convincing reason to support the ALJ's adverse credibility finding.  Moreover, Plaintiff *was* being treated for his depression through consultations with his general physician and the medication she prescribed.  (*See, e.g.,* AR 61-64.)  The ALJ offers no suggestion why this treatment was inadequate or supports the finding that Plaintiff is not credible.

The ALJ's second reason is far from convincing.  As noted earlier, Plaintiff testified that his inability to walk more than ten feet stems from his knee pain, and that both standing and walking hurts because of his knee and back pain.  (AR 77.) That physicians have recommended that a morbidly obese man with diabetes exercise and lose weight is not inconsistent with Plaintiff's testimony; there are many forms of exercise that do not require standing and walking.  That there is no specific recommendation to stand and walk more by the treating physicians aware of Plaintiff's pain complaints is not a basis for finding Plaintiff not credible. Significantly, the ALJ ignored Plaintiff's testimony that he would be undergoing

18

arthroscopic surgery for his knee in a month and currently was wearing a brace on his knee.  (AR 71.)

The ALJ's third and fourth reasons fail, not only given the uncontradicted evidence that Plaintiff was wearing a knee brace and would be undergoing knee surgery and could not have afforded physical therapy, but critically, because the ALJ is not permitted to interject his own medical opinion on what would be the proper treatment for someone with Plaintiff's claimed back pain and problems walking and balancing.  *See Nguyen v. Chater*, 172 F.3d 31, 35 (9th Cir. 1999) (as a lay person, the ALJ is not at liberty to substitute his own views for uncontroverted medical opinion or to interpret medical records in functional terms); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (" it is well settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion'") (citation omitted); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

**Third**, the ALJ's reliance on Plaintiff's daily activities as a basis for finding him not credible is not convincing.  The ALJ found not credible Plaintiff's testimony that he cannot walk more than ten feet due to knee pain (AR 71), because it purportedly is inconsistent with his November 14, 2012 hearing testimony and July 25, 2011 Function Report statements that:  once every two weeks, he shops for two to three hours (AR 187); he visits parents and friends occasionally (AR 188); and he drives to pick up his niece every day from school two and a half miles away and sometimes drives her to school (AR 65).  The ALJ opined that Plaintiff would not be able to accomplish such tasks if he could not walk more than ten feet or was in significant pain.  (AR 38.)  The ALJ also concluded there was an inconsistency between, on the one hand, Plaintiff's Function Report statements that his impairments "affect" his

ability to concentrate, remember, and follow instructions (AR 189), and on the other, his statements that he does not need help or reminders to take his medication (AR 186) and his hearing testimony that he takes his niece to and from school (AR 65) and Function Report statements that can follow written and spoken instructions "ok" (AR 189).

The ALJ's reasons are not convincing, as they rest on an unfair construction of Plaintiff's statements/testimony and/or purported "inconsistencies" that do not exist. There is no apparent inconsistency between Plaintiff's statements that his impairments, which he claims cause him substantial pain (AR 77-78), have an "affect" on his concentration, memory, and ability to follow instructions, and his statement that his instruction-following ability is merely "ok," as opposed to good or strong. No medical expertise is required to understand that pain can render concentration and the like less than optimal, even if such pain does not go so far as to prohibit concentration and so on. There also is no apparent inconsistency between Plaintiff's abilities to remember to take his medications and take his niece to and from school, and an unspecified "affect" on concentration, memory, etc. With respect to the alleged inconsistency between Plaintiff's testimony that he cannot walk more than ten feet and the few activities the ALJ identified, again, no apparent inconsistency exists. When Plaintiff indicated in July 2011 that he shopped every two weeks for two to three hours and occasionally visited friends and his parents, he also indicated that: he could not stand or walk for long periods and could not walk more than 100 feet before needing to rest ten minutes; and he did not go out much, because it was not comfortable for him, he is too fat, and it is hard to breathe. (AR 188-89.) Thus, Plaintiff's statements were not that he had an unfettered, easy ability to visit others and shop, as the ALJ apparently interpreted them; the plain, reasonable inference from his July 2011 statements as a whole were that these activities could be difficult for him. When Plaintiff testified at the hearing, 16 months had passed and he was scheduled for arthroscopic knee surgery

and wore a knee brace.  Moreover, Plaintiff did not testify that he cannot walk more than ten feet at all; he stated that he suffered from constant knee pain that made standing and walking painful and "difficult," and thus, he tried not to walk if possible and was looking into whether he could afford to get a scooter.  (AR 71, 77.)  Thus, the ALJ overlooked the very real possibility that Plaintiff's ability to do certain activities in July 2011 had lessened 16 months later, including due to knee deterioration requiring surgery, and the ALJ failed to question Plaintiff about this or otherwise develop the record.  Finally, even if walking more than ten feet was difficult for Plaintiff, there is no reason why this would have prohibited him from walking from his trailer to his car (and back) to drive his niece two and half miles to and from school; there simply is no inconsistency here.

A claimant's ability to engage in some physical activities is not necessarily inconsistent with a finding of disability.  *See Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).  Rather, an ability to take part in physical pursuits bears on a claimant's credibility only to the extent that the level of activity is in fact inconsistent with the alleged limitations.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Here, the ALJ noted some of Plaintiff's stated activities but failed to account for the significant qualifications on Plaintiff's abilities to engage in such activities that he noted, as well as to account for the fact that progressive conditions may worsen over a 16-month period.  The ALJ thus erred by failing to take into account all of the evidence of record and/or that which could have been adduced.  *See id.* at 722–23.  Moreover, and critically, the ALJ failed to explain how Plaintiff's ability to engage periodically in some fairly nominal, occasional activities translates into the ability to perform full-time work and renders Plaintiff's testimony about his pain and symptoms unworthy of belief.  *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (noting that the "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall

disability"); *Smolen v. Chater*, 80 F.3d 1273, 1283 n.7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."). Therefore, the ALJ's third reason does not constitute a clear and convincing reason for finding Plaintiff to be not credible.

**Fourth**, and finally, the ALJ found that there was a lack of objective evidence to support Plaintiff's claim of severe back pain, because an x-ray showed only mild spondylosis and no MRI had been performed – a test the ALJ stated he would "expect" to have been conducted if Plaintiff actually did have severe back pain. (AR 39.)  Again, the ALJ is not qualified to opine as to what medical tests should have been performed, particularly when, as here, an uninsured patient such as Plaintiff is unlikely to have been able to obtain such an expensive procedure.  In any event, "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins*, 261 F.3d at 857 (citation omitted).  As the ALJ's three prior reasons for finding Plaintiff not credible do not constitute clear and convincing reasons, the ALJ's fourth reason, on its own, cannot constitute a valid basis for his adverse credibility determination. *Burch*, 400 F.3d at 681 ("lack of medical evidence cannot form the sole basis for discounting pain testimony"); *see also Bunnell*, 947 F.2d at 346-47 ("the adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence," because "[i]f an adjudicator could reject a claim of disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings").

For the reasons stated above, the Court does not find the ALJ's reasons for discounting Plaintiff's credibility to be clear and convincing.

### III. **Remand For Further Proceedings Is Required**.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.; see also Treichler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-102 (9th Cir. 2014) (indicating that ordinarily, remand for further proceedings is the normal remedy, and explaining the "rare circumstances" under which a remand for payment of benefits would be appropriate).

The ALJ failed to set forth clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. The ALJ also erred in rejecting Dr. Leynes's opinion without proper reasons for doing so. The ALJ posited a hypothetical to the vocational expert premised upon Dr. Leynes's opinion, and the vocational expert opined that there are no jobs in the labor market that a person with the limitations assessed by Dr. Leynes could perform. (AR 86-88.) Thus, at first blush, the ALJ's errors might appear to warrant an order directing remand for an immediate payment of benefits, this case actually is not one of those "rare circumstances" when this remedy appropriately may be ordered. As discussed above, the record is uncertain as to Plaintiff's onset date, and no award can be made until that issue is resolved, which will require further proceedings and development of the record. In addition, it is possible that, upon remand, the ALJ could state appropriate reasons for the weight to be accorded Dr. Leynes's opinion, and it is not clear that Plaintiff

23

1    necessarily would be found disabled if his subjective symptom/pain testimony were

2    to be accorded proper consideration.

3        Thus, at a minimum, these issues must be resolved through further proceedings.

4    In addition, the ALJ must revisit his RFC findings related to Plaintiff's sit and

5    stand/walk limitations.  The ALJ did not follow any of the medical opinions fully on

6    this question and, instead, found that Plaintiff can stand or walk for two hours and

7    sit for six hours out of an eight-hour day, with no conditions that Plaintiff be able to

8    get up, sit, move around, etc. periodically.  (AR 34.)  There also is no medical

9    opinion that supports the ALJ's conclusion that Plaintiff can lift ten pounds

10   frequently.  As discussed earlier, an ALJ who is not qualified as a medical expert

11   may not rely on his own lay opinion regarding medical matters and cannot make

12   "his own exploration and assessment as to [the] claimant's condition."  *Day*, 522

13   F.2d at 1156.

14       The ALJ's reliance on his own medical opinion to determine Plaintiff's RFC

15   with respect to appropriate sitting and standing/walking limitations, as well as

16   certain lifting limitations, was error.  Given that the ALJ did not give proper reasons

17   for rejecting Dr. Leynes's opinion and Plaintiff's subjective symptom testimony, on

18   remand, the ALJ must either provide such reasons if he again decides to reject this

19   evidence *or* consider it appropriately as it pertains to Plaintiff's RFC, including as to

20   any appropriate limitations to be imposed.  It may be that further development of the

21   record will be required on this issue, as well as obtaining further vocational expert

22   testimony once appropriate consideration is given to Dr. Leynes's opinion and

23   Plaintiff's subjective symptom/pain testimony.

24       Accordingly, the Court concludes that remand for further administrative

25   proceedings is required.  *See Treichler*, 775 F.3d at 1101 (remand for award of

26   benefits is inappropriate where "there is conflicting evidence, and not all essential

27   factual issues have been resolved"); *Vasquez v. Astrue*, 572 F.3d 586, 600-01 (9th

28   Cir. 2009) (a court need not "credit as true" improperly rejected claimant testimony

24

where there are outstanding issues that must be resolved before a proper disability determination can be made); *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remand is an option where the ALJ fails to state sufficient reasons for rejecting a claimant's excess symptom testimony).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 29, 2015

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE